**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| United States of America, | ) | CR 06-795-PHX-JAT |
| Plaintiff, | ) ) | **ORDER** |
| vs. | ) ) | |
| James Joseph Everett, | ) ) ) | |
| Defendant. | ) ) ) | |

Pending before the Court are Defendant's motion to dismiss indictment and motion to preclude evidence. In its response to the motion to dismiss, the Government characterizes the charges in this case as follows:

> On August 29, 2006, a grand jury indicted Defendant on 7 counts of false declaration in bankruptcy proceedings in violation of 18 U.S.C. § 152(3) (Counts 1-7); 1 count of bankruptcy fraud in violation of 18 U.S.C. § 8 (Count 8); and 26 counts of concealment money laundering in violation of 18 U.S.C. § 1956(a)(1)(B)(I) (Counts 9-34). These charges arise from Defendant's Chapter 7 bankruptcy petition filed on September 9, 2002, and other filings in the bankruptcy concerning his disclosure of assets.

Doc. #25 at 2. Defendant does not dispute this characterization. Following a hearing, the Court rules as follows.

**Motion to Preclude Evidence**

Defendant argues that this Court should preclude a letter because Defendant argues that the letter is a forgery. Defendant argues for preclusion on the following theories: 1) the Government presenting false evidence would be a due process violation and the Government

1 has failed to disclose an expert who would opine the letter is not a forgery; 2) it is "improper"
2 to put the Defendant in the position of proving a negative; and 3) the letter will be
3 prejudicial, cause confusion, and improperly prolong the trial on a collateral issue.
4 (Defendant's arguments are stated in his reply, Doc. #37).

**Alleged Forgery**

6 First, the Government does not dispute that it cannot introduce false evidence. Instead
7 the Government argues that the letter is in fact authentic, and thus, not false evidence.

8 Second, per the Government, Defendant's theory on why the letter is a forgery is that
9 the letter contains a photocopied or computer-generated signature. (Doc. #28; Defendant
10 never makes an argument in his motion or reply as to why Defendant claims the letter is a
11 forgery, Defendant just starts from the premise that the letter is a forgery.) The Government
12 argues that the mere fact that the letter has a photocopied or computer-generated signature
13 does not, as a matter of law, make the letter a forgery that must be precluded at trial. (Doc.
14 #28 at 2).

15 Generally, Federal Rule of Evidence 901(a) states, "The requirement of authentication
16 or identification as a condition precedent to admissibility is satisfied by evidence sufficient
17 to support a finding that the matter in question is what its proponent claims." Applying this
18 rule, in *U.S. v. Estrada*, 441 F.2d 873, 877 (9th Cir. 1971), the Court found error in admitting
19 signatures when the Government had failed to offer direct or circumstantial evidence to
20 authenticate the signatures. Specifically, the Court stated, "To lay foundation, the
21 Government had to introduce evidence sufficient to sustain a finding that each of the money
22 orders was signed by the person against whom the documents were sought to be admitted."
23 *Id.*

24 Federal Rule of Evidence 901(b) gives a non-exhaustive list of examples of how to
25 authenticate a document. None of these examples directly speaks to the situation where the
26 signature is claimed to be authorized by the "signor," but is in fact a photocopy or a
27 computer-generated signature. Therefore, the Court returns to the general rule, which is that
28 the Government cannot admit this letter unless it makes a threshold presentation of evidence

- 2 -

sufficient to support a finding that the letter in question is what the Government claims it is. The Court will make this ruling as to whether sufficient evidence has been presented to authenticate the letter as required under Rule 901(a) based on the evidence the Government offers at trial.[1] Therefore, Defendant's motion to preclude based on Defendant's allegation that the letter is a forgery is denied, without prejudice to Defendant making all objections Defendant deems appropriate at trial.

### Alleged impropriety of making Defendant prove a negative

Defendant's entire argument on this theory is:

"Although the government bears the burden of proof in proving the forged letter was prepared by Mr. Everett, the admission of such evidence places Mr. Everett in the untenable, and improper, position of having to prove a negative. *See United States v. Newman*, 144 F.3d 531, 543 n. 13 (7th Cir. 1998) (noting 'the difficulty in proving a negative proposition')." Doc. #37 at 4.

Nothing in Defendant's argument nor the case he cites are an actual evidentiary or constitutional basis to preclude the letter. Therefore, the motion to preclude based on this theory will be denied.

### Probative value versus prejudice (Federal Rule of Evidence 403)

Defendant argues that the prejudice of this letter outweighs its probative value because of Defendant's difficulty in proving another individual's opportunity to create this letter.[2]

---

[1] For example, the Government claims it will lay foundation for/authenticate the letter by showing that Defendant has admitted that it is his signature (albeit arguing it is a photocopy and not an original signature), the letter is on Defendant's letterhead, the letter includes detailed knowledge and information about Defendant's private finances, and that the letter was generated as part of one of Defendant's real estate transactions.

[2] Defendant made one argument in his motion: that the Government cannot produce false evidence. Defendant's other arguments: 1) the letter cannot be shown to be authentic, 2) having to refute the Government's proof on the letter is "improper" and 3) 403 are all found for the first time in Defendant's reply; therefore, the Court has not had the benefit of written argument by the Government on any of these issues. To avoid a prejudice to the Defendant from his counsel's failure to make his arguments in his motion, the Court has

On this showing, the Court cannot say as a matter of law the letter is inadmissable because it is too prejudicial. Such ruling is without prejudice to Defendant making the same objection at trial if Defendant deems the objection to be appropriate. Accordingly, the motion to preclude on this basis will also be denied.

**Motion to Dismiss Some Counts of the Indictment**

In *United States v. Omer*, 395 F.3d 1087, 1088 (9th Cir. 2005), the Court of Appeals stated,

> If properly challenged prior to trial, an indictment's complete failure to recite an essential element of the charged offense is not a minor or technical flaw subject to harmless error analysis, but a fatal flaw requiring dismissal of the indictment. *United States v. Du Bo*, 186 F.3d 1177, 1179 (9th Cir.1999). Omer's indictment fails to recite an essential element of the charged offense- materiality of falsehood. Therefore, because Omer properly challenged the sufficiency of the indictment prior to trial, the district court should have dismissed the indictment.

Specifically, the Court of Appeals found that the indictment was deficient because, while the indictment did allege that the defendant knowingly executed or attempted to execute a scheme or artifice to defraud certain financial institutions via a check kiting scheme, the indictment did not allege that the defendant misrepresented or concealed a <u>material</u> fact. *Id*. at 1088-89. The Court of Appeals found that materiality was an element of the crime charged, and, therefore, had to be alleged in the indictment. *Id*. Thus, the Court of Appeals concluded that the indictment was insufficient <u>as a matter of law</u>.

The motion to dismiss in this case differs significantly from the motion to dismiss in *Omer*, because the motion to dismiss in this case does not argue that the Government failed to allege an element of the crime. Instead, it argues that <u>as a matter of fact</u> the Government will not be able to prove the allegations in the indictment. Certainly Rule 29(a) of the Federal Rules of Criminal Procedure permit a defendant to move for judgment of acquittal, "after the government closes its evidence or after the close of all the evidence...," but nothing in this rule, nor any other rule cited by Defendant, indicates that the Court can weigh the proceeded to consider these theories.

- 4 -

sufficiency of the Government's evidence in ruling on pre-trial motions. Seemingly recognizing this distinction, Defendant states, "The challenged counts of the indictment are deficient on their face...." Doc. #19 at 2. However, as the following discussion will reveal, Defendant seeks to have the Court weigh the sufficiency of the Government's evidence.

Before considering the Counts individually, and to evidence the Court's conclusion that Defendant is really challenging the sufficiency of the proof in this case, the Court notes that Defendant <u>does not make an argument nor cite a case</u> in his motion to dismiss arguing any legal reason why the indictment should be dismissed. Doc. #19 at 1-2. Instead, Defendant attaches an expert report, wherein the expert opines why, in his opinion, the actions taken by Defendant do not equate to a violation of the bankruptcy code. However, if substantiating the motion requires an expert to analyze the evidence, the motion is not really a "facial" attack. Moreover, it appears, at least for purposes of the written motion, Defendant hopes the Court will construe his arguments for him from the expert report. The Court has read the expert report, but will not make-up arguments therefrom.

**Counts 4 and 6-8**

Turning to the Government's response, the Government notes at footnote 1 that Defendant did not move to dismiss Counts 4 or 6-8. In his reply, Defendant agrees he did not move to dismiss these Counts, but indicates that he should have also sought dismissal of Count 6 and part of Count 8. The Court will not consider motions made for the first time in the reply. As a result, Counts 4 and 6-8 will proceed to trial.

**Counts 1-3**

Counts 1 through 3 deal with Defendant's alleged failure to disclose his "interest" in Lott & Sires, Inc. Doc. #25 at 2. Specifically, Lott & Sires, Inc. owned a lease-purchase agreement, a Washington Mutual account, and a Nevada First Bank account. Doc. #19-2 at 5. With regard to the Lott & Sires, Inc. stock, the Government states, "The government intends to prove that Defendant owned Lott & Sires personally." Doc. #25 at 3. Defendant's expert states, "If in fact it was [Defendant] personally, rather than the Everett P.C., which owned the stock in Lott & Sires, [Defendant] did not properly reflect his share ownership in

that corporation." Doc. #19-2 at 5. The Court agrees with the Government that, "Defendant's ownership capacity in Lott & Sires plainly presents a question of fact subject to a determination by a jury." Doc. #25 at 4.[3] Accordingly, the motion to dismiss Counts 1-3 will be denied.

For the first time in his reply, Defendant claims that the Government, "misstates or misunderstands the Defendant's motion." Doc. #43 at 2. Standing alone, this assertion defies understanding because Defendant did not make an argument in his motion. Presumably, Defendant means the Government misunderstood the argument the Government was supposed to extrapolate from the expert's report.

Notwithstanding this deficiency in the motion, Defendant argues (in his reply) that the regardless of whether he personally, or his law firm (Everett, P.C.), owned the stock he failed to disclose, the Government cannot show Defendant failed to disclose the <u>assets</u> of Lott & Sires, because under Arizona law, he was only required to disclose the stock, not the corporation's assets. Defendant argues that the indictment should be dismissed because it alleges a failure to disclose the <u>assets</u>, not the stock. Defendant continues in his reply to argue that the Government's reliance on federal cases interpreting bankruptcy law is misplaced, and that only Arizona law should determine Defendant's "property" interests.

Defendant is charged with violating 18 U.S.C. § 152(3), which states:

> A person who - - ... (3) knowingly and fraudulently makes a false declaration, certificate, verification, or statement under penalty of perjury as permitted under section 1746 of title 28, in or in relation to any case under title 11, ... shall be fined under this title, imprisoned not more than 5 years, or both.

Clearly this statute specifically addresses knowingly and fraudulently making a false declaration in a bankruptcy case. What Defendant seems to be arguing is that the declaration

---

[3] In his reply, Defendant basically concedes this point, "Defendant concedes that if he owned Lott & Sires personally, he was required to disclose his ownership interest in the corporation." Doc. #2 at 43. Notably, the indictment says "interest" in Lott & Sires, Inc., then lists a specific asset. The Court does not read the indictment to preclude the possibility that "interest" means stock, which it is undisputed Defendant did not disclose (though it is disputed whether he personally owned the stock).

- 6 -

1  cannot be "false" and "fraudulent" unless it is "false" and "fraudulent" under Arizona law.
2  The Government is arguing that the declaration can be "false" and "fraudulent" if it is "false"
3  and "fraudulent" under bankruptcy law.

4  Apparently a distinction arises in this case between what state law and bankruptcy law
5  define as an "asset" that would require disclosure.  Specifically, Defendant's expert opines
6  that under Arizona law, a debtor would not have to list the individual assets of a corporation,
7  but only his stock in the corporation (*citing Cutter Aviation Corp. v. Arizona Dep't of
8  Revenue*, 958 P.2d 1, 7 (Ariz. App. 1998)).[4]

9  Conversely, one can commit "fraud" as the term is used in the bankruptcy realm, by
10 materially misleading the trustee or the creditors.  For example, in *In re Aubrey*, 111 B.R.
11 268, 273 (9th Cir. BAP 1990), the Court found that debtors who play "hide and seek" with
12 their assets to benefit themselves to the detriment of their creditors, evidence the requisite
13 intent to defraud creditors.  *See also In re Levine*, 107 B.R. 781, 787 (Bankr. S.D. Fla. 1989)
14 (intent to defraud shown when debtor set up shell corporations); *In re Topper*, 85 B.R. 167,
15 168-70 (Bankr. S.D. Fla. 1988) (intent to defraud shown when debtor did not disclose stock
16 held by his wife).[5]  These cases stem from the debtor's general duty to disclose his
17 "beneficial interest" in a corporation.

18 In this case, the Government claims that Defendant created Lott & Sires, Inc., in
19 Nevada, four months before he declared bankruptcy and transferred significant assets to the
20 corporation.  The Government then claims that regardless who held the Lott & Sires stock,
21 Defendant hid the assets of Lott & Sires, Inc., by not disclosing them in a reasonable manner

---

[4] As indicated above, because the Court does not interpret "interest" as excluding stock, the motion to dismiss would be denied even if this argument were correct because the Court does not find the indictment to be facially defective.

[5] More specifically, in *In re Aubrey*, the Court found that:
The court must deny a discharge if "the debtor, with intent to hinder, delay, or defraud a creditor ... has transferred ... property of the debtor, within one year before the date of the filing of the petition...." 11 U.S.C. § 727(a)(2)(A).
*In re Aubrey*, 111 B.R. 268, 273 (9th Cir. B.A.P. 1990).

- 7 -

1 to the bankruptcy trustee. Further, the Government claims that as the sole shareholder of Lott 2 & Sires, Inc., and as the sole beneficiary of Lott & Sires, Inc.'s assets, Defendant was 3 required to disclose this beneficial interest. The Court agrees with the Government that 4 because the statute under which Defendant is charged specifically charges a fraud in a title 5 11 proceeding, the law governing what title 11 requires is the relevant law to consider in 6 determining whether Defendant violated the statute. As a result, the Court agrees with the 7 Government that the facts recounted above raise a question of fact for the jury as to whether 8 Defendant failed to make full disclosure of his assets, including assets that might be in the 9 nature of a "beneficial interest."[6]

10 Further, as a third alternative reason why the motion to dismiss should be denied, the 11 Government argues that, even if the question of whether Defendant committed the crime 12 charged is defined by Arizona law, under Arizona law, the motion should be denied. To this 13 end, the Government argues that Lott & Sires, Inc. is a sham corporation and under *Dietel* 14 *v. Day*, 492 P.2d 455, 457 (Ariz. App. 1972), and the corporate entity should be disregarded.[7]

---

[6] Taking Defendant's argument to its logical conclusion, if an Arizona citizen transferred everything he owned to his child — legally under Arizona law — then declared bankruptcy the next day and did not disclose any of those assets, that person could never be held to have "defrauded" his creditors in bankruptcy, because technically under Arizona law he in fact did not own the property the day he signed the declaration of bankruptcy. As the quoted language from *In re Aubrey* above indicates, the breadth of the bankruptcy laws is intended to be broader than property laws in each state. Further, the Court believes the criminal statutes enforcing the integrity of the bankruptcy proceedings were intended to be consistent with the bankruptcy laws themselves and not to be dependant on the laws of each of the states. Defendant's reliance (in his reply) on *Butner v. U.S.*, 440 U.S. 48, 55 (1979) which held that property interests are defined by state law does not change this Court's conclusion that fraud and intent to defraud via hide and seek or other inadequate disclosures are governed by federal law.

[7] In *Dietel*, the Court stated, "As a general rule, a corporation will be treated as a legal entity until sufficient reason appears to disregard the corporate form. The corporate fiction will be disregarded when the corporation is the alter ego or business conduit of a person, and when to observe the corporation would work an injustice. The alter ego status is said to exist when there is such unity of interest and ownership that the separate personalities of the corporation and owners cease to exist." 492 P.2d at 457.

1  Thus, the Government claims that it can argue, under Arizona law, that Defendant was
2  required to disclose the individual assets of Lott & Sires, Inc. The Court agrees that alter ego
3  theory is a possible theory why Defendant would have had to disclose the individual assets
4  of Lott & Sires, Inc., under Arizona law; and, this alter-ego theory is sufficient to overcome
5  Defendant's argument that the indictment is facially defective. Thus, for this final alternative
6  reason, the motion to dismiss will be denied.

**Count 5**

8  Despite having moved to dismiss Count 5 (failure to disclose an interest in the estate
9  of Ann C. Everett) in his motion to dismiss, Defendant abandoned this argument at oral
10 argument and conceded that this Count contained a factual dispute.

**Counts 9-34**

12 These counts charge Defendant with concealment money laundering for making 25
13 payments from the Lott & Sires' bank accounts to pay for the home in Paradise Valley.
14 Defendant argues that these actions do not equate to money laundering because all of the
15 payments were from income earned by Defendant, post-petition, for his personal services.
16 Defendant further argues that post-petition income of the debtor for personal services
17 performed by the debtor is not property of the bankruptcy estate (*citing In re Fitsimmons*,
18 725 F.2d 1204, 1211 (9th Cir. 1984)) (Doc. #19-2 at 8). The Government does not dispute
19 Defendant's expert's recitation of the law regarding post-petition income. However, the
20 Government does dispute whether the payments in question are distributions of income for
21 personal services of the debtor.

22 Per the Government, when Defendant filed his bankruptcy petition in September 2002,
23 Defendant declared that his monthly income was $4,300. (Doc. #25 at 5). The Government
24 alleges that beginning in October 2002, Defendant's law firm began making payments to Lott
25 & Sires, Inc., and then Lott & Sires made payments toward the house Lott & Sires owns in
26 Paradise Valley. Doc. #25 at 5 and Doc. #19-2 at 7. Defendant then rents this house from
27 Lott & Sires. Doc. #19-2 at 7. The payments made on the house by Lott & Sires were
28 $5,500 per month every month for October 2002 through June 2004. There were additional

- 9 -

1  payments on January 17, 2003, July 15, 2003, June 21, 2004, June 25, 2004, and June 28,
2  2004, of $ 25,000, $25,000, $30,000, $35,000 and $100,000 respectively.

3  Defendant now claims that all of these payments, which average out to $13,220 per
4  month, were personal services income to Defendant that he was not required to report to the
5  bankruptcy trustee and that were not part of the bankruptcy estate. However, rather than
6  having this income paid to Defendant personally by his law firm, Defendant had such income
7  paid to a corporation of which he was the sole shareholder (or his law firm was the
8  shareholder), which then paid for a house that the corporation then rented to Defendant.

9  The Government argues that this money could have been proceeds, product, offspring,
10 rents or profits of or from property of the estate, Doc. #25 at 5, in which case it would have
11 been part of the estate. *See* 11 U.S.C. § 541(a)(6). Defendant replies and argues this theory
12 of the Government is not possible because <u>as a matter of fact</u> the law firm did not have any
13 such assets from which to produce such income.[8]

14 As has been discussed throughout this Order, this Court cannot weigh the
15 Government's evidence and make assumptions about the character of money received (see
16 footnote below), and from there dismiss an indictment. All of these factual disputes will be
17 issues of fact for the jury to resolve. Moreover, while the Court does not believe, considering
18 there is an indictment from a grand jury, that the Government must establish an issue of fact
19 to proceed to trial, nonetheless, given the large discrepancy between Defendant's stated
20 monthly income in his bankruptcy petition ($4,300/month), and what he immediately
21 thereafter claims to be personal services income ($13,220/month),[9] and given the convoluted

---

23 [8] Defendant's expert similarly opines as to this conclusion of fact, "One might
24 reasonably assume ... that the funds specified did not represent the proceeds of some form
   of unlawful activity, but instead represented money that was earned by [Defendant] post-
25 bankruptcy." Doc. #19-2 at 8.

26 [9] The Government argues that this discrepancy in income, standing alone, is enough
27 to create a question of fact for the jury that Defendant made a false declaration in the
   bankruptcy proceeding and, thus, all payments thereafter were in violation of 18 U.S.C. §
28 1956(a)(1)(B)(I). Because the Court has found that the indictment is not facially deficient

- 10 -

way Defendant chose to distribute his alleged income to himself (by having his law firm pay a corporation that was wholly owned by Defendant, which in turn made payments on a house that was owned by the corporation and rented to Defendant, but which Defendant did not consider to be an "asset" of his), and, finally, given that Defendant's law firm had other associates and staff that may have been producing income, the Government has established an issue of fact for the jury to consider on the whether the payments were made in violation of 18 U.S.C. § 1956(1)(B)(I).

As indicated throughout this Order, this Court will take the approach envisioned by the bankruptcy code and the criminal statutes charged in the indictment, and permit the Government to attempt to prove that based on the evidence as a whole, Defendant knowingly and willfully conducted and attempted to conduct a financial transaction using the proceeds of the specified unlawful activity of false declarations, certifications, verifications, and/or statements under penalty of perjury in a bankruptcy proceeding, knowing the transaction was designed in whole or in part to conceal the nature of the proceeds all the while knowing the funds represented the proceeds of some form of unlawful activity. As a result, the motion to dismiss Courts 9-34 will also be denied.

**Conclusion**

For the reasons stated above,

IT IS ORDERED that the motion to preclude evidence (Doc. #18) and the motion to dismiss some counts of the indictment (Doc. #19) are denied.

DATED this 14th day of April, 2008.

James A. Teilborg
United States District Judge

---

as to these counts considering all of the Government's evidence, the Court need not decide whether this alone is sufficient.

- 11 -