**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| United States of America, | ) | CR 06-795-PHX-JAT |
| Plaintiff, | ) ) | **ORDER** |
| vs. | ) ) ) | |
| James Joseph Everett, | ) ) | |
| Defendant. | ) ) ) | |
| | ) | |

On May 15, 2008, a jury convicted Defendant James J. Everett of bankruptcy fraud (Counts 1–6 and 8) and of money laundering (Counts 9–34). The jury acquitted him of the bankruptcy fraud charge in Count 7. On May 21, 2008, Defendant moved to set aside the jury verdicts and enter judgements of acquittal or, alternatively, grant a new trial on some or all of the remaining counts. (Doc. ## 98, 109 (supplemental motion)). In addition to the arguments in the pending motions, Defendant incorporates, by reference, oral arguments advanced during trial in support of his Rule 29 motions. (Doc. ## 112 (Tr. Day 4), 116 (Tr. Day 6)). The Government moved separately for a final order of forfeiture of Defendant's assets. (Doc. # 110.) The Court now rules on the pending motions.[1]

_____

[1] After the Defendant's motion, as supplemented, was fully briefed, Defendant moved for oral argument. In moving for oral argument, Defendant offered no justification for why, after the motion was fully briefed, he seeks supplemental oral argument when he had oral argument at trial. Moreover, after the Court's independent determination, the Court finds that further oral argument would not have aided the Court's decisional process. *See e.g.,*

1   **I.     LEGAL STANDARD**

2          **A.      Motion for Judgment of Acquittal**

3          Courts review a motion for judgment of acquittal applying the same test as a challenge

4   to the sufficiency of the evidence.    *United States v. Ladum*, 141 F.3d 1328, 1337 (9th Cir.

5   1998).    In considering whether there is sufficient evidence to deny a motion for judgment

6   of acquittal, courts "review the evidence presented in the light most favorable to the

7   government to determine whether any rational trier of fact could have found the essential

8   elements of the crime beyond a reasonable doubt." *Id.*

9          **B.      Motion for New Trial**

10         With respect to a motion for new trial, "the court may vacate any judgment and grant

11  a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a).  A district court has

12  greater discretion to grant a new trial than to grant a judgment of acquittal. *United States v.*

13  *Kellington*,  217 F.3d 1084, 1097 (9th Cir. 2000).  Thus, in considering a motion for new

14  trial, "[t]he court is not obliged to view the evidence in the light most favorable to the verdict,

15  and it is free to weigh the evidence and evaluate for itself the credibility of the witnesses."

16   *Id.*  More specifically, "[i]f the court concludes that, despite the abstract sufficiency of the

17  evidence to sustain the verdict, the evidence preponderates sufficiently heavily against the

18  verdict that a serious miscarriage of justice may have occurred, it may set aside the verdict,

19  grant a new trail, and submit the issue for determination by another jury." *Id.*  (internal

20  quotations omitted).

21  **II.    DEFENDANT'S MOTION**

22         **A.      Counts 1–3**

23         The jury convicted Defendant on Counts 1–3 for violations of 18 U.S.C. § 152(3).

24  (Doc. # 1 ("Indictment") at 4-5.) Specifically, Defendant failed to disclose in his bankruptcy

25  proceeding his interests in his corporation, Lott & Sires, Inc. ("L&S"), and its assets: Count

26

27
    *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998); *Lake at Las Vegas Investors Group,*
28  *Inc. v. Pacific. Dev. Malibu Corp.*, 933 F.2d 724, 729 (9th Cir. 1991).

1   1, a lease-with-option-to-purchase contract for a house in Paradise Valley (the "P.V. house");

2   Count 2, a Washington Mutual bank account; and Count 3, a Nevada First Bank account.

3   *Id.* Defendant argues that the law does not require him to disclose the assets of a corporation

4   in which he has an interest.  He asserts that he only had to disclose his stock interest in L&S,

5   which he admits he failed to do.  While he admits this failure, he notes that the Government

6   did not charge him with failure to disclose his stock interests.  Furthermore, he argues that

7   the Government's alter ego theory that would require an individual to list corporate assets

8   on a bankruptcy filing failed, because there was no evidence that the "corporate formalities"

9   were not maintained.  In furtherance of this argument, Defendant asserts that the "alter ego"

10  instruction given by the Court did not include several necessary factors and was, therefore,

11  prejudicially erroneous.

12       On the morning of the last day of trial, immediately prior to closing arguments,

13  Defendant raised an objection that the "alter ego" jury instruction should also include a list

14  of factors.  The "corporate formality" factors that he offered were specific to the context of

15  a corporation owning another corporation.  Because these factors did not apply to the present

16  situation, specifically an individual owning a corporation, the Court declined to give

17  Defendant's proposed additions to the jury instruction.  Additionally, the Court found this

18  requested addition to the jury instruction to have been waived by Defendant's failure to raise

19  it sooner.

20       Defendant again raises the same objection and argues that the Court should have

21  instructed the jury on the "corporate formality" factors.  He asserts that the following factors

22  would more appropriately identify when a corporation is an alter ego:

23       [s]tock ownership by the parent; common officers or directors; financing of
         subsidiary by the parent; payment of salaries and other expenses of subsidiary
24       by the parent; failure of subsidiary to maintain formalities of separate
         corporate existence; similarity of logo; and plaintiff's lack of knowledge of
25       subsidiary's separate corporate existence.

26  *Gatecliff v. Great Republic Life Ins. Co.*, 821 P.2d 725, 728 (Ariz. App. 1991) (citing 18 Am.

27  Jur. 2d *Corporations* § 59 (1985)).  The Court again finds that the *Gatecliff* factors, as

28  written, clearly apply to a parent/subsidiary corporate relationship, and do not apply to the

- 3 -

1  present case where an individual owns a corporation.  Moreover, Defendant cites no legal

2  authority that requires these factors be given in a jury instruction.

3  Defendant also urges the Court to reconsider the alleged prejudicial effect of the

4  instruction under *Ize Nantan Bagowa Ltd . v. Scalia*, 577 P.2d 725 (Ariz. App. 1978).  *Ize*

5  includes two elements that establish the legitimacy of an Arizona corporation that is owned

6  by an individual.  *Id.* at 728.  However, it qualifies those elements by stating that "[t]he

7  corporate fiction will be disregarded when the corporation is the alter ego or business conduit

8  of a person, and when to observe the corporation would work an injustice."  *Id.*   The actual

9  jury instruction in the present case provided that the assets of a corporation must be listed if

10  "the corporation is an alter ego or business conduit of the individual, and to observe the

11  corporation would work an injustice."  (Doc. # 94 (Jury Instructions) at 25.)  The Court's

12  instruction and *Ize*'s language are the substantially the same.  Thus, Defendant's argument

13  is without merit.

14  Because the Court properly instructed the jury on the alter ego theory of when the jury

15  could find that an individual was required to list the assets of a corporation, the Court does

16  not find the interests of justice necessitate a new trial and the motion for new trial based on

17  an allegedly inadequate jury instruction will be denied.

18  **B.     Count 4**

19  Count 4 is also a violation of § 152(3) for "failure to disclose interest in [two]

20  National Bank account[s]."  (Indictment at 4-5.)  In the context of his "prejudicial spillover"

21  argument, Defendant argues that the accounts and their respective balances of $500 each,

22  standing alone, were not material; thus defendant argues that he should receive a new trial

23  wherein the accounts would be evaluated alone, without any spillover evidence.  Doc. #109

24  at 13.[2]  In his Rule 29 motion at trial, he also argued that government failed to establish that

25

26  [2] Defendant argues for new trial on the theory that if the Court grants a judgment of
27  acquittal on counts 9-34, he should receive a new trial on the remaining counts (1-6 and 8)
that would be free from any evidence of money laundering, and thus, the trial of the
28  remaining counts would not be "prejudiced" by the evidence admitted related to money

1    the accounts were part of the bankruptcy estate.   Doc. #112 (Tr. Day 4) (time stamp

2    03:41:24-03:42:46).

3        Beginning with Defendant's argument regarding the insufficiency of the evidence to

4    establish that the accounts were part of the bankruptcy estate, the evidence showed that both

5    accounts listed the address of the P.V. home.   Not disclosing the accounts furthered the

6    Defendant's scheme to hide the P.V. house from discovery by the bankruptcy trustee.

7    Furthermore, based on all the evidence, the jury could reasonably infer that the accounts were

8    part of the bankruptcy estate.   Accordingly, viewing the evidence in the light most favorable

9    to the Government, the court finds sufficient evidence to support the jury's verdict; thus, the

10   motion for judgment of acquittal will be denied.

11       With regard to Defendant's argument that these bank accounts were not "material,"

12   Defendant seems to be arguing that based on the dollar amounts in the accounts, there should

13   be some *de minimus* exception to disclosure based on whether the asset was material.

14   Materiality, as it has been used in the bankruptcy context, does not appear to contain a *de*

15   *minimus* exception.   In fact, "[m]ateriality does not require a showing that creditors are

16   harmed by the false statement."   *United States v. Lindholm*, 24 F.3d 1078, 1083 (9th Cir.

17   1994).   Nonetheless, even if materiality in the bankruptcy context allows a *de minimus*

18   exception, the jury in this case found the failure to disclose the existence of these accounts

19   and/or the money in them to be material and there was sufficient evidence to support this

20   conclusion.   Accordingly, the motion for judgment of acquittal due to lack of materiality will

21   be denied.   The Court will address the alleged prejudicial spillover below.

22       **C.    Count 5**

23       Count 5 is also a violation of § 152(3) for failure to disclose Defendant's interest in

24   his deceased mother's estate.   (Indictment at 4-5.)   It is undisputed that the Government's

25   sole evidence regarding Defendant's knowledge of the estate was Victoria Bellomo's

26

27   laundering.   *See* Doc. #109 at 12-13.   Alternatively, he makes a similar argument based on

28   his acquittal on Count 7.

1  testimony.  Defendant argues that Bellomo was not credible and, therefore, there was no

2  evidence to show he knew about his deceased mother's estate at the time of his bankruptcy

3  filing.  He also argues that, even if the Court decides to credit Bellomo, the Government did

4  not prove that he had an interest in the estate at the time he filed his bankruptcy petition.  He

5  implies that because the most he could have had was a contingent interest, as a matter of law

6  he was not required to disclose it.

7        As noted above, in a motion for judgment of acquittal, this Court will view the

8  evidence to determine whether a rational trier of fact could have found the essential elements

9  of the crime beyond a reasonable doubt.  The Court finds that a rational trier of fact could

10  have found Bellomo credible.  Crediting this testimony, there was evidence that the elements

11  of the crime were met beyond a reasonable doubt.  As to Defendant's legal argument,

12  Defendant failed to cite any authority supporting his argument that as a matter of law he does

13  not have to disclose a contingent interest in an estate.  Based on the foregoing, the Court will

14  denied the motion for judgment of acquittal as to Count 5.

15        **D.     Count 6**

16        Count 6 is also a violation of § 152(3) for "failure to disclose his ownership interest

17  in L&S concerning his '2 year lease on house' with L&S."  (Indictment at 5.)  Defendant

18  argues that not only did he disclose that he had a lease on the P.V. house, but he was not

19  required to disclose it because the lease was an asset of L&S and, as argued in Counts 1–3,

20  he only had to disclose his stock interest in L&S and not the corporate assets.

21        Defendant did not list the address of the P.V. house anywhere on his bankruptcy

22  filings.  Thus, he did not adequately disclose it.  As previously discussed, the "alter ego"

23  instruction properly allowed the jury to find that Defendant was required to list the assets of

24  L&S.  Therefore, the motion for judgment of acquittal on Count 6 will be denied.

25        **E.     Count 8**

26        Count 8 is a violation of 18 U.S.C. § 157 for having "devised and intended to devise,

27  a scheme and artifice to defraud the Bankruptcy Court and creditors in a bankruptcy

28  proceeding . . . by concealing property of the bankruptcy estate through material false

1  declarations . . . under penalty of perjury." (Indictment at 5.) The concealed property is the

2  property listed in Counts 1–6. (Indictment at 5-6.) Because the Court denied Defendant's

3  motion on Counts 1–6, and because Count 8 is dependant on those counts, the Court, for the

4  above reasons, will deny Defendant's motion as to Count 8.

5        **F.  Counts 9–34**

6        Counts 9–34 charge violations of 18 U.S.C. § 1956(a)(1)(B)(i) for concealment money

7  laundering using the "proceeds" of a "specific unlawful activity," which was bankruptcy

8  fraud.[3]  Specifically, Defendant made twenty-six payments from the L&S Nevada Bank

9  account on the lease/purchase contract for the P.V. house. (Indictment at 6-8.) Defendant

10  argues that there is insufficient evidence to sustain the money laundering counts against him.

11        In moving for judgment of acquittal, first, Defendant asserts that the Government did

12  not present any evidence establishing the actual source of the laundered funds and that it was

13  a "specified unlawful activity," which he claims is a necessary element of § 1956. Second,

14  Defendant argues that the Government did not present evidence that Defendant designed the

15  laundered funds so as to conceal their nature to allow them to enter the commercial economy

16  as legitimate funds. Third, Defendant contends that the Government did not prove that the

17  "proceeds" of the "specified unlawful activity" were "profits" as opposed to expenses or

18  "receipts," which Defendant argues the Supreme Court now requires as of its recent ruling

19  in *United States v. Santos*, 128 S.Ct. 2020, 2027 (2008).

20        For concealment money laundering in violation of § 1956(a)(1)(B)(i), when the

21  underlying "specified unlawful activity" is bankruptcy fraud, the jury must have found that:

22        (1)    Defendant "conducted a financial transaction" with the "proceeds" of

23               bankruptcy fraud;

24

25        [3] In this case, Counts 1–8 all involve committing fraud in a bankruptcy proceeding.

26  Counts 1–7 are violations of 18 U.S.C. § 152(3), which is "knowingly and fraudulently mak[ing] a false declaration . . . in relation to any case under title 11." Count 8 is a violation

27  of 18 U.S.C. § 157, which includes "devis[ing] or intending to devise a scheme to defraud . . . in relation to a proceeding under title 11." Thus, for the purposes of this order,

28  "bankruptcy fraud" includes Counts 1–8.

1        (2)     Defendant knew that the funds were "proceeds" of bankruptcy fraud; and

2        (3)     Defendant knew that the transaction was "designed in whole or part to conceal

3                  or disguise the nature, the location, the source, the ownership, or the control

4                  of proceeds of" bankruptcy fraud.

5 The Court considers Defendant's three arguments and reviews the evidence in a light most

6 favorable to the Government to determine whether any rational juror could have found the

7 essential elements of money laundering.[4] *See U.S. v. Golb,* 69 F.3d 1417, 1421-22 (9th Cir.

8 1995).

9                        **1.**     **"Specified Unlawful Activity**"

10        In support of his argument that the Government failed to prove the source of the

11 laundered funds, Defendant claims that the Government admitted in trial that the sole

12 "specified unlawful activity" on which the Government based the money laundering charges

13 was the activity alleged in Count 7—falsely underestimating his income on the bankruptcy

14 schedule. Because the jury acquitted him on Count 7, Defendant argues that the Government

15 failed to prove any "specified unlawful activity." While Defendant acknowledges that

16 inconsistent verdicts alone do not constitute a sufficient grounds for setting aside a verdict,

17 he nonetheless argues that because the evidence was insufficient to convict on Count 7, it is

18 also insufficient to support a conviction on the money laundering charges. Defendant further

19 argues that there has been no evidence that proves that the income paid into the undisclosed

20 law firm account and subsequently transferred into the L&S Nevada Bank account was other

21 than Defendant's post-petition income derived from his personal services. The Court finds

22 these arguments unpersuasive.

23        Contrary to Defendant's assertion, the Government did not claim or admit that the

24 only "specified unlawful activity" was in Count 7. Defendant argues that because IRS Agent

25 Sidney Mack responded affirmatively to the question posed by Defendant's counsel on cross-

26

27        [4] Defendant does not explicitly challenge the "knowledge" aspect on any of the money laundering elements. Accordingly, the Court does not address his "state of mind" in this

28 order.

1   examination concerning whether Count 7 was the "specified unlawful activity," it must stand

2   alone as the only unlawful activity on which the Government based the money laundering

3   counts. (Doc. # 101 (Tr. Day 2) at 43.)  However, the record reveals that it was Defendant's

4   counsel who focused the questioning specifically on Count 7 to the exclusion of the other

5   counts of bankruptcy fraud.  (*Id.* at 44.)  Agent Mack explained that "['specified unlawful

6   activity'] is the term for the Title 18 [section] 1956 charge." *Id.*  Counsel then asked if the

7   charge was also for falsifying income.  (*Id.*) Agent Mack replied "[a]nd also he hid the

8   identity, the origin of the purchase of the house . . . it's the whole picture."  Counsel then

9   directed Agent Mack to "just focus on the income."  Thus, the Government did not isolate

10  Count 7 as the only "specified unlawful activity," Defendant's counsel did.

11         Furthermore, rather than tie it to a specific charge or count, the indictment generally

12  defined "specified unlawful activity" as "false declarations, certifications, verifications,

13  and/or statements under penalty of perjury in a bankruptcy proceeding." (Doc. # 1 at 6.). *See*

14  *United States v. Mankarious*, 151 F.3d 694, 701 (7th Cir. 1998) (affirming the sufficiency

15  of the evidence where the indictment did not identify a specific mailing as the "specified

16  unlawful activity," but spoke more generally to a "mail fraud scheme").  Thus, the "specified

17  unlawful activity" in this case was bankruptcy fraud, which includes all of Counts 1–8 rather

18  than only Count 7.  Because the jury convicted Defendant on Counts 1–6 and 8, there is no

19  inconsistent verdict.  The jury convicted him of the "specified unlawful activity," but just not

20  one aspect of it, Count 7.

21         Even if Defendant was correct that the Government based the money laundering

22  exclusively on Count 7, the Court would still deny the motion.  The Government does not

23  need to convict a defendant on the *actual* "specified unlawful activity," on which the money

24  laundering charge is predicated. *See Golb,* 69 F.3d at 1422.  Where the jury could infer that

25  the source of laundered "proceeds" was illegitimate, the Ninth Circuit Court of Appeals has

26  affirmed convictions even though the jury found that the same evidence from which the jury

27  made the inference was insufficient to convict the defendant for the *actual* "specified

28  unlawful activity." *Id.* ("Because the government was not able to trace the purchase funds

1   to a laundered account, the evidence is less compelling than that supporting the other

2   laundering counts, but was nonetheless sufficient to support the jury's verdict."). Other

3   circuits have reached the same conclusion. *See United States v. Blackman*, 904 F.2d 1250,

4   1257 (8th Cir.1990) (affirming conviction where the jury could infer that the funds came

5   from the "specified unlawful activity"); *United States v. Mankarious,* 151 F.3d 694, 702 (7th

6   Cir. 1998) (affirming conviction and noting "money laundering statute does not require the

7   government to trace the laundered proceeds to a specific predicate offense."). In convicting

8   Defendant on Counts 1–6 and 8, the jury found him guilty of bankruptcy fraud even though

9   they did not find there was sufficient evidence to convict him specifically of falsifying his

10   income. Finally, the Court also finds there was sufficient evidence to support the jury's

11   conclusion that the funds that were transferred to the L&S bank account were not from

12   Defendant's post-petition personal services.

13   ### 2.      Concealment of Funds

14   Defendant argues that the Government did not offer any evidence that his transactions

15   were "designed in whole or part to conceal or disguise the nature, the location, the source,

16   the ownership, or the control of proceeds of" bankruptcy fraud. In *Golb*, the Ninth Circuit

17   Court of Appeals affirmed a conviction when the primary evidence of concealment was "the

18   use of a legitimate corporation as the nominal purchaser [that] 'not only creates the false

19   impression that the legitimate business was the source of wealth, but it creates documentary

20   evidence in support of that deception that could mislead an investigator.'" *Id.* (quoting *United*

21   *States v. Garcia-Emanuel*, 14 F.3d 1469, 1476-77 (10th Cir.1994)).

22   Here, the Government presented similar evidence to the jury that Defendant's

23   company, L&S, purchased his home. L&S, like the corporation in *Golb*, was the nominal

24   purchaser of the P.V. house. The Court finds this was sufficient evidence for the jury to find

25   the concealment element of money laundering.

26   ### 3.      Proceeds: "Profits" versus "Receipts"

27   Defendant urges the Court to apply the Supreme Court's recent ruling in *United States*

28   *v. Santos*, 128 S.Ct. 2020 (2008), which requires proof that the "proceeds" were profits

1   instead of receipts, to conclude that judgment of acquittal is required in this case.

2   Preliminarily, the Court notes that *Santos* is a plurality decision in which the plurality notes

3   that its holding is limited to the more narrow ground on which Justice Stevens decided his

4   concurrence. *Santos*, 128 S.Ct. at 2031. Nonetheless, even applying the plurality's reasoning

5   in *Santos* to this case, the Court would not grant judgment of acquittal (nor would the Court

6   grant a new trial).

7        The Supreme Court in *Santos* held that because the term "proceeds" was ambiguous

8   in the money laundering statute, the rule of lenity required that it be interpreted in the manner

9   more favorable to the defendant.   128 S.Ct at 2026.   Thus, the Court concluded that

10  "proceeds" means profits as opposed to gross receipts, because it is more difficult for the

11  Government to distinguish the money in this manner.  *Id.*  The Supreme Court also adopted

12  the "profits" interpretation because it avoided the "merger" problem in which a defendant

13  might be charged with multiple crimes for the same action.  *Id.* at 2026.  In *Santos*, the

14  "specified unlawful activity" was a gambling operation that generated gross receipts, but also

15  expenses in the form of paying employees and lottery winners. *Id.* at 2031.   Because the

16  money laundering charge had been specifically based on those expenses, the Court held the

17  Government did not prove that the defendant laundered "criminal profits;" thus, the Court

18  affirmed the district court's order vacating the defendant's convictions.  *Id.*

19       Here, the "specified unlawful activity" was a scheme to defraud the Bankruptcy Court

20  and creditors.  The only expenses incurred would be in advancing that scheme.  It is unlikely

21  that Defendant incurred any expenses in making the false declarations on the bankruptcy

22  petition. It is possible that he did incur expenses in establishing the nominee corporation and

23  bank accounts, both integral mechanisms of concealing financial transactions from the

24  bankruptcy trustee.  The "proceeds" here, however, simply do not relate to these types of

25  expenses.  Instead, the "proceeds" were the funds laundered through L&S to purchase what

26  would ultimately be the Defendant's home.  The fact that Defendant used the funds to

27  purchase another asset does not operate to convert the proceeds into an expense.  The

28  proceeds were the "profits" of having defrauded the Bankruptcy Court, and had his scheme

1 been successful those funds and house would have remained an asset of Defendant. Thus,

2 because the laundered "proceeds" were "profits" as opposed to expenses or "receipts," the

3 *Santos* ruling, even if it were not a plurality decision, would not require a reversal of the

4 money laundering convictions.[5]

5       Because convictions in this case are consistent with *Santos* and, because the Court

6 finds there was sufficient evidence for the jury to find the "proceeds" and "concealment"

7 elements of money laundering, the Court will deny Defendant's motion for judgment of

8 acquittal on Counts 9–34.

9       **G.**    **"Prejudicial Spillover"**

10       As discussed above at footnote 2, Defendant argues that if this Court grants judgment

11 of acquittal on Counts 9-34, the Court should grant a new trial on Counts 1-6 and 8 because

12 such new trial would not have evidence of the money laundering counts. The Court has

13 denied the motion for judgment of acquittal as to Counts 9-34, therefore, this theory

14 prejudicial spillover is moot.

15       Also, Defendant makes this same argument based on his acquittal on Count 7.

16 Defendant argues that he is entitled to a new trial because such new trial would be free from

17 any evidence relating to the charge in Count 7, and therefore he would not be prejudiced by

18 the "spillover" effect that the evidence relating to that charge may have had on the other

19 charges. First, Defendant's theory in this regard is inconsistent with the general policy that

20 for purposes of judicial efficiency and economy, multiple charges will be tried together.

21 *United States v. Whitworth*, 856 F.2d 1268, 1277 (9th Cir. 1988) (citing *United States v.*

22 *Armstrong*, 621 F.2d 951, 954 (9th Cir. 1980)). Second, Defendant's argument is logically

23 inconsistent. Defendant basically argues that the evidence the jury heard on Count 7, which

24 the jury found was inadequate to convict him on Count 7, was nonetheless so damaging that

25 it prejudiced the jury into convicting him on other counts. If the evidence was insufficient

26

27       [5] Because the Court finds that the "proceeds" were profits and not expenses, there is

28 no  risk of the "merger" problem as discussed in *Santos.* 128 S.Ct. at 2026.

1    in the jury's mind to convict on the very Count at issue, the Court finds that it is unlikely that

2    the jury would rely on such evidence to convict on other counts; thus the Court finds

3    Defendant has not shown "prejudice."  Third, and finally, Defendant has cited no case that

4    holds that acquittal on one count justifies retrial on the remaining counts to avoid a

5    miscarriage of justice.  Accordingly, Defendant's motion for new trial on any theory of

6    prejudicial spillover will be denied.

7    **IV.   FORFEITURE**

8          The Defendant reasserts his argument regarding *Santos* as his defense to the

9    Government's request for forfeiture. (Doc. # 120 at 1-2.)  As discussed above, however, the

10   Court finds the result in this case to be consistent with *Santos*.  Thus, the Court will grant the

11   Government's request for forfeiture.

12         Accordingly,

13         **IT IS ORDERED** that Defendant's motions for judgments of acquittal and new trial

14   (Doc. ## 98, 109) are **DENIED**.

15         **IT IS FURTHER ORDERED** that the Government's motion for final order of

16   forfeiture (Doc. # 110) is **GRANTED** (further order to follow).

17         **IT IS FURTHER ORDERED** that Defendant's motion for oral argument (Doc.

18   #121) is denied.

19         DATED this 13ᵗʰ day of August, 2008.

20

21

22                                          James A. Teilborg
                                           United States District Judge

23

24

25

26

27

28

- 13 -